**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN G. RICHARDSON,<br><br>             Plaintiff,<br><br>v.<br><br>ALEJANDRO MAYORKAS, *in his official capacity as Secretary of the United States Department of Homeland Security*,<br><br>             Defendant. | Civ. Action No. 17-1588 (EGS/ZMF) |

**MEMORANDUM OPINION**

## I.   Introduction

Plaintiff John G. Richardson ("Mr. Richardson" or "Plaintiff") has sued his former employer—Defendant Alejandro Mayorkas in his official capacity as Secretary of the United States Department of Homeland Security ("DHS" or "Defendant").[1] He raises claims of discrimination based on disability and failure to accommodate under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, *et seq.*, and 42 U.S.C. § 1981a of the Civil Service Reform Act of 1978 ("Civil Service Reform Act"); hostile work environment and retaliation under

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the current Secretary of DHS "is automatically substituted as a party" for his predecessor.

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42
U.S.C. § 2000e, *et seq.*; a due process violation pursuant to 5
U.S.C. § 7513(b)(1); failure to reemploy in violation of the
Uniformed Services Employment and Reemployment Rights Act of
1994 ("USERRA"), codified at 38 U.S.C. §§ 4301-4333; and failure
to consider efficiency of service. *See* Am. Compl., ECF No. 26 at
1-2 ¶¶ 1-3, 14-18 ¶¶ 68-95.[2]

Pending before the Court is Defendant's Motion for Summary
Judgment. *See* Def.'s Mot., ECF No. 41. The Court referred this
case to Magistrate Judge Zia M. Faruqui for full case
management, including preparation of a Report and Recommendation
("R. & R.") for this motion. *See* Minute Order (Oct. 13, 2020).
Magistrate Judge Faruqui issued his R. & R. recommending that
this Court grant Defendant's Motion for Summary Judgment. *See* R.
& R., ECF No. 52 at 1. Mr. Richardson raises several objections
to Magistrate Judge Faruqui's R. & R. *See generally* Pl.'s Objs.
to Magistrate Judge's R. & R. ("Pl.'s Objs."), ECF No. 53.

Upon careful consideration of the R. & R., the objections
and response thereto, the applicable law and regulations, and
the entire record herein, the Court hereby **ADOPTS** Magistrate

---

[2] When citing electronic filings throughout this Opinion, the
Court cites to the ECF page number, not the page number of the
filed document, with the exception of deposition testimony,
which is to the page number of the deposition transcript.

Judge Faruqui's R. & R., *see* ECF No. 52; and **GRANTS** Defendant's Motion for Summary Judgment, *see* ECF No. 41.

## II. Background[3]

### A. Factual Background

In 2008, Mr. Richardson began his career with DHS as a Senior Operations Analysis Specialist ("SOAS") within Customs and Border Patrol ("CBP"), Office of Internal Affairs ("IA"), Integrity Programs Division ("IPD"). *See* Pl.'s Counterstatement of Disputed Facts ("SOMF"), ECF No. 47-4 at 1 ¶ 1. In 2010, Mr. Richardson was deployed to Africa with the U.S. Navy, and during pre-deployment combat training, he sustained injuries that manifested in chronic lower back pain with associated weakness and numbness in his leg, and pain radiating to his right lower extremity. *See id.* at 1-2 ¶¶ 2-3; Pl.'s Ex. Z, ECF No. 47-31 at 4. These injuries limited Mr. Richardson's ability to sit or stand for prolonged periods of time and reduced his ability to concentrate. *See* SOMF, ECF No. 47-4 at 2 ¶ 3; Pl.'s Ex. Z, ECF No. 47-31 at 2.

In September 2011, after completing his deployment, Mr. Richardson returned to the U.S., SOMF, ECF No. 47-4 at 2 ¶ 4; and from then until September 2012, he was placed on a temporary medical hold for physical evaluation, *id.* at 3 ¶ 7. After being

---

[3] The Background section closely tracks Magistrate Judge Faruqui's R. & R. *See* R. & R., ECF No. 52 at 2-9.

medically separated from the military, on September 18, 2012, Mr. Richardson returned to DHS in the same position that he held prior to deployment—as a SOAS. *Id.* at 2 ¶ 5, 3 ¶ 9. His first-line supervisor was Mr. Ryan Lid ("Mr. Lid"), his second-line supervisor was Ms. Susan Keverline ("Ms. Keverline"), and his third-line supervisor was Mr. Jeffery Matta ("Mr. Matta"). *Id.* at 2 ¶ 6; Def.'s Ex. B., ECF No. 41-7 at 3.

### 1. Mr. Richardson's Request for Reasonable Accommodations

On August 3, 2012, prior to his return to work, Plaintiff emailed Mr. Matta—the then-Director of IA, IPD—estimating his return date and advising that "I am now an [eighty] percent disabled veteran. Also, I have some accommodations that I will be requesting necessary to support my long-term health." Pl.'s Ex. A, ECF No. 47-6 at 1. Mr. Matta requested that Mr. Richardson forward "whatever special accommodations [he might] require so that [management could] ensure they [were] addressed timely." Pl.'s Ex. G, ECF No. 47-12 at 3. On August 6, 2012, Mr. Matta and Mr. Richardson spoke on the phone, during which Plaintiff stated that he had problems with prolonged sitting and standing, that he needed to be hyper-vigilant about his physical fitness, and that he did not think returning to IPD was a good idea. Def.'s Ex. D, ECF No. 41-9 at 2. On August 16, 2012, Mr. Matta emailed Mr. Richardson in follow up, directing him to

identify the "specific job [he was] interested in and [Mr. Matta would] do everything [he could] to facilitate a reassignment." Pl.'s Ex. G, ECF No. 47-12 at 1. Mr. Richardson later updated his return date to September 17, 2012 and provided his resume to Mr. Matta "in case it prove[d] helpful in placing [him] within CBP." Def.'s Ex. D-1, ECF No. 41-10 at 3.

On his first day back, Mr. Richardson was met with a return celebration for his service. *See* Pl.'s Ex. K, ECF No. 47-16 at 409:21-410:17. During the celebration, he alleges that Assistant Commissioner James Tomsheck ("AC Tomsheck") said that IPD was the "best place" for him. *Id.* at 411:10-12. Later that day, Mr. Richardson met with Mr. Matta, Mr. Lid, and Ms. Keverline. *See id.* at 410:18-19. During that meeting, Mr. Richardson alleges that Mr. Matta stated: "John, you're staying in IPD. . . . You can go out there and tell anybody you want to tell about it, I don't care. That's your business." *Id.* at 411:3-6. Thereafter, Mr. Richardson claims he reiterated his need for reassignment to his supervisors, but that Mr. Lid responded, "Well, why don't you just retire retire?"—*id.* at 413:1-414:17; which Mr. Lid testified meant reference to general retirement as opposed to military retirement, *see* Pl.'s Ex. L, ECF No. 47-17 at 271:2-15. On September 26, 2012, Mr. Lid put Mr. Richardson in contact with an Employment Relations ("ER") Specialist to address his accommodation request. *See* Def.'s Ex. I-3, ECF No. 41-28 at 2.

5

On October 2, 2012, Mr. Richardson contacted Mr. Christopher Smoot ("Mr. Smoot") of the Office of Diversity and Civil Rights ("DCR") within DHS to allege the denial of his accommodation request and his concern about being "subjected to [ ] additional hostile treatment, harassment, and/or prohibited personnel practices between now and whenever [he was] reassigned." Pl.'s Ex. Q, ECF No. 47-22 at 6. *But see* Def.'s Ex. L, ECF No. 41-35 at 14 (disputing Mr. Richardson's claim that his "request for reasonable accommodations ha[d ] been denied"). Mr. Smoot met with Mr. Richardson the next day to discuss his complaints. *See* SOMF, ECF No. 47-4 at 7 ¶ 18. Based on their communications, Mr. Smoot believed that Mr. Richardson did not want to enter the DCR reasonable accommodation or the Equal Employment Opportunity ("EEO") complaint process because he was focused instead on filing an external complaint. *See* Pl.'s Ex. F, ECF No. 47-11 at 118:17-22; Pl.'s Ex. Q, ECF No. 47-22 at 4-5. Mr. Richardson agrees that he declined to enter the EEO process but disputes that he refused to move forward with his accommodation request. *See* SOMF, ECF No. 47-4 at 7-8 ¶¶ 18-19.

On October 22, 2012, Mr. Richardson informed DCR of his intent to file an EEO complaint against CBP "for denial of [his] request for accommodations due to [his] military-service related veterans disabilities[,]" directing subsequent communications to his attorney. Pl.'s Ex. Y, ECF No. 47-30 at 1. The next day, Mr.

Richardson forwarded this email to his supervisors, *see id.*; and on October 24, 2012, Mr. Matta sent a letter to Mr. Richardson's physician requesting medical documentation to determine his entitlement to reasonable accommodations, *see* Def.'s Ex. G-1, ECF No. 41-14 at 2-4. In a letter dated November 1, 2012, Mr. Richardson's physician, Dr. MariaPaz Babcock ("Dr. Babcock"), recommended that DHS implement the following accommodations: (1) reassignment to a position that was not predominantly sedentary; (2) use of leave for continued rehabilitation; and (3) access to gym facilities, with reassignment to the Reagan Building as one solution to provide facility access. *See* Pl.'s Ex. Z, ECF No. 47-31 at 2. Dr. Babcock opined that "with reasonable accommodations, Mr. Richardson [could] work for the Agency in a productive capacity, but that without accommodations, [his] health [would] quickly decline." *Id.*

Mr. Smoot then contacted the Job Accommodation Network ("JAN") on November 7, 2012 to obtain technical guidance on accommodating Mr. Richardson.[4] *See* Def.'s Ex. G-4, ECF No. 41-17 at 1. JAN made recommendations for a "Contract Specialist" with Mr. Richardson's medical conditions, including: reducing or eliminating physical exertion and workplace stress; scheduling

---

[4] JAN is "a free consulting service, provided by the U.S. Department of Labor's Office of Disability Employment Policy, designed to increase the employability of people with disabilities[.]" *See* Def.'s Ex. G-5, ECF No. 41-18 at 4 n.1.

periodic rest breaks away from the workstation; allowing a
flexible work schedule and flexible use of leave time; allowing
work from home; implementing an ergonomic workstation design;
providing a scooter or other mobility aid if walking could not
be reduced; providing a height adjustable desk and ergonomic
chair; moving the workstation close to common use office
equipment; providing a low task chair and rolling safety ladder;
and providing a cart to move files, mail, and supplies. *Id.*

On November 9, 2012, Mr. Smoot submitted an accommodation
request on behalf of Mr. Richardson, relaying his request for
reassignment to a non-sedentary position outside of IA, IPD. *See*
Def.'s Ex. G-5, ECF No. 41-18 at 3. By letter dated November 23,
2012, Mr. Matta denied this request, stating: "Reassignment to
an open position is the accommodation of last resort and is
implemented only when no other accommodation has proved
effective." *See* Def.'s Ex. G-6, ECF No. 41-19 at 3. Instead, Mr.
Matta offered Mr. Richardson six accommodations: (1) the ability
to take frequent breaks within the building of up to 15 minutes
without supervisory approval; (2) access to any team meeting
room or empty office space during breaks if he needed to stretch
or rest in private; (3) the ability to take longer breaks or
breaks outside the building, as long as he advised management of
the break in advance and of his approximate return time; (4) the
ability to adjust his arrival or departure time in order to use

the gym facilities in the Reagan Building so long as he worked his eight-hour shift during IPD's core business hours; (5) the ability to have his work station evaluated by a specialist in ergonomic workplaces and thereafter have the "best work station" provided to him; and (6) guaranteed approval of leave for all prescribed rehabilitation appointments for the next six months. *Id.* at 3-4. The letter informed Plaintiff that he could seek to modify these accommodations if they proved ineffective and could request reconsideration by submitting a written request within ten calendar days of his receipt of the letter. *Id.* at 4.

While Mr. Richardson had already taken stretch breaks during the workday, he did not try the other accommodations he was offered. *See* Def.'s Ex. A, ECF No. 41-6 at 43:8-44:19. However, by letter dated November 29, 2012, Mr. Richardson requested "reconsideration of the reasonable accommodation options the Agency offered to him," and asked to telework or be transferred internally while IA processed his request. *See* Def.'s Ex. G-7, ECF No. 41-20 at 2-3. Mr. Richardson acknowledged that reassignment could require him to reduce his pay grade, and he expressed his willingness to do so. *Id.* at 3.

In support of his request for reconsideration, Dr. Babcock provided a supplemental letter reiterating Mr. Richardson's request for reassignment to a more active position. *See* Def.'s Ex. G-8, ECF No. 41-21 at 2. However, Dr. Babcock was unaware of

DHS's six proffered accommodations at the time she wrote this letter. *See* Def.'s Ex. H, ECF No. 41-25 at 32:9-12. In later deposition testimony, Dr. Babcock stated her opinion that each of the accommodations would have been beneficial to Plaintiff in continuing to perform in his sedentary position, and that she "would have been very pleased with those accommodations if [she] had known about them." *Id.* at 32:13-34:9.

Following invocation of his rights under the Family Medical Leave Act ("FMLA"), Mr. Richardson completed his last day in the office on December 5, 2012 before going on approved FMLA leave. SOMF, ECF No. 47-4 at 29 ¶ 86, 30 ¶ 88. That month, Mr. Matta learned of an available position with the Security Management Division in the Reagan Building. *See* Pl.'s Ex. JJ, ECF No. 47-41 at 1. However, after forwarding the position to Mr. Smoot, it was determined that the duties of that position were primarily sedentary and nearly equivalent to that of an SOAS, and so the position was not offered to Plaintiff. *See id.*; Pl.'s Ex. B, ECF No. 47-7 at 104:13-105:15, 213:7-214:16. In January 2013, DHS granted Mr. Richardson's reconsideration request and initiated a search for non-sedentary vacancies. *See* SOMF, ECF No. 47-4 at 14 ¶ 34. Mr. Matta informed Mr. Richardson of this decision via letter on January 22, 2013, stating that a "job search [would] be conducted to identify vacant funded positions in the local commuting area." Def.'s Ex. G-9, ECF No. 41-22 at 3.

In March 2013, Defendant conducted the first search for positions equivalent to Mr. Richardson's grade or one level lower, but it did not yield any non-sedentary vacancies for which he was qualified. *See* Def.'s Ex. E-1, ECF No. 41-12 at 7 ¶ 17; Pl.'s Ex. J, ECF No. 47-15 at 3-5; SOMF, ECF No. 47-4 at 15 ¶¶ 37-38. Two positions in Baltimore were identified, but they were not raised because Baltimore was outside the local commuting area. *See* Pl.'s Ex. LL, ECF No. 47-43 at 1-3.

Defendant then performed a DHS-wide job search for local, vacant, funded, non-sedentary positions, but this search also did not yield any qualifying positions. *See* Def.'s Ex. E-1, ECF No. 41-12 at 8 ¶ 17. On May 28, 2013, Mr. Matta advised Mr. Richardson by letter that no qualifying non-sedentary positions were available. *See* Def.'s Ex. G-11, ECF No. 41-24 at 3. The letter instructed Mr. Richardson to contact Mr. Matta if he wished to have the job search expanded outside the Washington, D.C. local commuting area, reemphasized Defendant's willingness to implement the six accommodations previously proposed, and noted that failure to respond would constitute an end to the accommodation process. *See id.* at 2-3. Mr. Richardson did not respond to this letter. *See* SOMF, ECF No. 47-4 at 16 ¶ 41.

### 2. Disputes Between Mr. Richardson and DHS

On September 24, 2012, shortly after his return to IA, IPD, Mr. Richardson was mistakenly notified that he owed $1,800.42

11

for unpaid health benefits. *See* Def.'s Ex. K-1, ECF No. 41-33 at
2. On September 28, 2012, Mr. Richardson emailed IA, with the
subject line, "Billed for [the Federal Employees Health Benefits
Program ("FEHB")] while on Active Duty—Again!"—to explain that
he was "erroneously billed over ($1800.00) by FEHB for unpaid
health benefits" while he was on active duty, an error which
"happened to [him] in 2011 as well." *See* Def.'s Ex. K-2, ECF No.
41-34 at 2-3. Mr. Richardson also claims he received erroneous
bills on a weekly basis as well as federal debt notification
letters. SOMF, ECF No. 47-4 at 22 ¶ 66; *see* Pl.'s Ex. RR, ECF
No. 47-48 at 36. Mr. Richardson was advised that officials would
look into the issue, *see* SOMF, ECF No. 47-4 at 22 ¶ 64; and on
October 12, 2012, Ms. Keverline informed Mr. Richardson that the
error had been resolved and "the FEHB bill was cancelled as of
10/4/12[,]" *id.* ¶ 65; Def.'s Ex. K-1, ECF No. 41-33 at 6.

On October 15, 2012, Mr. Richardson sent an email to Mr.
Matta with the subject line "Financial Harassment Continues—
10/15/2022, Hostile Environment Update," advising Defendant of
40 hours missing from his paycheck. *See* Def.'s Ex. L, ECF No.
41-35 at 13. He requested an audit of his pay, to "include a
complete accounting of [his] military leave and [to] address the
erroneous health care bill deductions for coverage during [his]
active military duty time." *Id.* at 13. Defendant conducted two
audits for various pay periods, *see id.* at 2-8; and ultimately

12

paid Mr. Richardson for this missing time. *Id.* at 11; *see* Def.'s Ex. K-1, ECF No. 41-33 at 8 ("With respect to the 40 hours—We already corrected the timecard[.]").

In late October 2012, Mr. Richardson's supervisors emailed him to ask about his whereabouts after seeing him leave work early. *See* Pl.'s Ex. V, ECF No. 47-27 at 2. Mr. Richardson responded that he had already notified them that he was leaving early due to "intolerable" back pain and stated that they "were too preoccupied with finding fault with" him. *Id.* at 2-3.

In November 2012, Mr. Matta advised an ER Specialist of his and Ms. Keverline's concerns about Mr. Richardson. *See* Def.'s Ex. N, ECF No. 41-37 at 2. Ms. Keverline noted that Plaintiff appeared frustrated about his perceived mistreatment by IA leadership, that the tone of his emails had changed over time, and that he had created office stress. *See id.* at 4. Likewise, Mr. Matta noted that Mr. Richardson was "becoming increasingly irrational, withdrawn, non-responsive, [and] agitated," causing him to have "an altered view of reality" that was "creating anxiety" in the workplace and "cause for concern." *Id.* at 5-6. He believed Mr. Richardson was "demonstrating warning signs that [were] consistent with other workplace violence episodes." *Id.* at 6. The ER Specialist recommended referring Mr. Richardson to the Employee Assistance Program ("EAP"). *See id.* at 2. When Mr.

Matta informed Mr. Richardson of the EAP referral, he objected and left the room. *See* SOMF, ECF No. 47-4 at 26 ¶ 79.

On January 22, 2013, Mr. Richardson forwarded an email to Mr. Lid expressing frustration about the effects of his leave without pay ("LWOP") status on his family and career. *See* Def.'s Ex. O, ECF No. 41-38 at 7. He stated that he belonged to two high-risk categories for suicide—service member and member of law enforcement—and that he was not operating under optimal conditions. *See id.* at 8. DHS contacted Mr. Richardson about the possible implications of these statements regarding suicide. *See id.* at 4. He denied having suicidal thoughts but claimed he was raising the issue out of obligation "to those who would follow in his footsteps" at DHS. *Id.*; SOMF, ECF No. 47-4 at 27 ¶ 81.

Between December 2012 and June 2013, Defendant placed Mr. Richardson on "Do Not Admit" ("DNA") status and issued a notice featuring his picture to security personnel. *See* Def.'s Ex. M, ECF No. 41-36 at 2; SOMF, ECF No. 47-4 at 28-29 ¶ 85.[5]

### 3. Mr. Richardson's Termination Following Excessive Absenteeism

On November 1, 2012, Mr. Richardson invoked his FMLA rights, which allowed him to take LWOP for up to twelve work weeks during a twelve-month period. *See* Def.'s Ex. P, ECF No.

---

[5] It is unclear from the record evidence when, for how long, and who proposed the DNA notice. *See* R. & R., ECF No. 52 at 8 n.2.

41-39 at 2-3. Mr. Richardson was on approved FMLA leave from
December 6, 2012 to April 11, 2013, SOMF, ECF No. 47-4 at 30 ¶
88; but he did not return to the office after taking FMLA leave,
*see* Def.'s Ex. A, ECF No. 41-6 at 46:4-47:2.

On September 16, 2013, DHS sent Mr. Richardson a letter
proposing his removal from the Federal Service due to excessive
absenteeism. *See* Def.'s Ex. P-1, ECF No. 41-40 at 2. From
September 23, 2012 to September 7, 2013, he used "69.5 hours of
annual leave, 165 hours of sick leave, and 1016 hours of [LWOP]
. . . outside of the hours . . . invoked under the [FMLA]." *Id.*
After Mr. Richardson replied to his proposed removal, *see* SOMF,
ECF No. 47-4 at 30 ¶ 91; Mr. Joseph Gaudiano, the deciding
official, sustained the excessive absenteeism charge and issued
notice of Mr. Richardson's removal, effective March 8, 2014, *see*
Def.'s Ex. P-2, ECF No. 41-41 at 2; Def.'s Ex. P-3, ECF No. 41-
42 at 2.

On April 7, 2014, Mr. Richardson filed an appeal with the
U.S. Merit Systems Protection Board ("MSPB"). *See* Def.'s Ex. Q,
ECF No. 41-43 at 2. He alleged disability discrimination,
retaliation, violation of his due process rights, denial of
reemployment under USERRA, and discrimination based on his
military service. *See id.* at 3. On September 22, 2017, the MSPB
Administrative Judge ("AJ") affirmed the removal action and
denied corrective action under USERRA. *See id.* at 2-3.

### B. Procedural Background

On August 7, 2017, Mr. Richardson filed this action. *See* Compl., ECF No. 1 at 1. On March 16, 2020, DHS filed its Motion for Summary Judgment. *See* Def.'s Mot., ECF No. 41. Plaintiff initially filed his opposition on June 26, 2020, *see* ECF No. 44; but the parties consented to him filing a revised opposition brief since the initial filing exceeded the allowable page limit, *see* Unopposed Consent Mot. for Extension of Time to File Pl.'s Revised & Compliant Opp'n, ECF No. 46 at 1-2; Minute Order (July 15, 2020) (granting this motion). On August 13, 2020, Mr. Richardson filed his Amended Opposition and accompanying exhibits, *see* Pl.'s Opp'n, ECF No. 47; to which DHS replied on November 13, 2020, *see* Def.'s Reply, ECF No. 51.

Magistrate Judge Faruqui, having been referred this case for full case management, *see* Minute Order (Oct. 13, 2020); issued the R. & R. on July 23, 2021, recommending that the Court grant DHS's Motion for Summary Judgment, *see* R. & R., ECF No. 52 at 1. On August 6, 2021, Mr. Richardson submitted his objections to the R. & R. *See* Pl.'s Objs., ECF No. 53. DHS filed its response on August 20, 2021. *See* Def.'s Resp., ECF No. 54. Mr. Richardson's objections are now ripe and ready for the Court's adjudication.

### III. Standard of Review

####    A. Objections to a Magistrate Judge's Report and Recommendation

Pursuant to Federal Rule of Civil Procedure 72(b), a party may file specific written objections once a magistrate judge has entered a recommended disposition. *See* Fed. R. Civ. P. 72(b)(1)-(2). A district court "may accept, reject or modify the recommended disposition[.]" Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). A district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the [c]ourt reviews the [R. & R.] only for clear error." *Houlahan v. Brown*, 979 F. Supp. 2d 86, 88 (D.D.C. 2013) (citation and internal quotation marks omitted). "Under the clearly erroneous standard, the magistrate judge's decision is entitled to great deference and is clearly erroneous only if on the entire evidence the court is left with the definite and firm conviction that a mistake has been committed." *Buie v. Dist. of Columbia*, No. 16-1920, 2019 WL 4345712, at *3 (D.D.C. Sept. 12,

2019) (citing *Graham v. Mukasey*, 608 F. Supp. 2d 50, 52 (D.D.C. 2009) (internal quotation marks omitted)).

Objections must "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for objection." LCvR 72.3(b). "[O]bjections which merely rehash an argument presented [to] and considered by the magistrate judge are not 'properly objected to' and are therefore not entitled to de novo review." *Shurtleff v. EPA*, 991 F. Supp. 2d 1, 8 (D.D.C. 2013) (citation omitted).

### B. Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). The moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted). This burden "may be

discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

On the other hand, to defeat summary judgment, the nonmoving party must "go beyond the pleadings" to designate specific facts showing that there is a genuine issue of material fact for trial. *Id.* at 324. A material fact is one that is capable of affecting the outcome of the litigation, while a genuine dispute is one in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmoving party's opposition "must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence" in the record. *Musgrove v. Dist. of Columbia*, 775 F. Supp. 2d 158, 164 (D.D.C. 2011), *aff'd*, 458 F. App'x 1 (D.C. Cir. 2012); *Celotex*, 477 U.S. at 324. Furthermore, in the summary judgment analysis, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## IV.  Analysis

DHS has moved for summary judgment on Plaintiff's claims for: (1) failure to accommodate; (2) hostile work environment; (3) retaliation; (4) violation of due process; (5) failure to reemploy; and (6) failure to consider efficiency of service

under the Rehabilitation Act, Title VII, the Civil Service
Reform Act, 5 U.S.C. § 7513(b)(1), and USERRA, *see* Def.'s Mot.,
ECF No. 41-3 at 1; and Magistrate Judge Faruqui recommended
granting DHS's motion "for each claim[,]" R. & R., ECF No. 52 at
1. Mr. Richardson does not object to the R. & R.'s conclusions
as to his hostile work environment, due process, and efficiency
of service claims, *see generally* Pl.'s Objs., ECF No. 53; and
thus the Court adopts those findings and grants summary judgment
as to those claims. Instead, Plaintiff raises seven objections,
one pertaining to Magistrate Judge Faruqui's determination of
the undisputed facts, two relating to Mr. Richardson's
Rehabilitation Act claim, three pertaining to his retaliation
claim under Title VII, and one regarding his USERRA claims. The
Court addresses each objection in turn.

### A. Magistrate Judge Faruqui Did Not Err in His Determination of the Undisputed Facts

Mr. Richardson's first objection is a factual one, claiming
that Magistrate Judge Faruqui failed to discuss a genuine issue
of material fact related to errors in his retirement pay
calculations, which he claims "contributed to the [financial]
harassment by Defendant[.]" *See* Pl.'s Objs., ECF No. 53 at 3-4.
Specifically, Mr. Richardson claims that the issue of whether
DHS "resolved the error regarding retirement pay calculations"
was not addressed in Magistrate Judge Faruqui's determination

that DHS resolved the financial issues between itself and Mr.
Richardson. *Id.* (citing R. & R., ECF No. 52 at 7). DHS counters
that there is no genuine dispute regarding "whether the Agency
properly calculated Plaintiff's retirement annuity date" because
he "never presented" this argument to the Court, and plus, "the
purported dispute related to [his] retirement pay calculation .
. . [was] related to [his] dispute with the Office of Personnel
Management[,]" not with DHS. Def.'s Resp., ECF No. 54 at 3-4.

The relevant summary judgment rules make clear that a court
may deem undisputed assertions of fact in a movant's statement
of material facts that are not properly "controverted." *See* LCvR
7(h)(1); Fed. R. Civ. P. 56(e)(2). "An assertion of fact
properly presented in a movant's statement of material facts is
not 'controverted' when a non-movant supplies additional facts
and 'factual context' . . . that do not actually dispute the
movant's asserted fact." *Toomer v. Mattis*, 266 F. Supp. 3d 184,
191 (D.D.C. 2017); *see also Gibson v. Off. of the Architect of
the Capitol*, No. 00-2424, 2002 WL 32713321, at *1 n.1 (D.D.C.
Nov. 19, 2002) ("Plaintiff's Statement is almost completely
unhelpful to the Court as its provisions rarely address the
facts outlined in Defendant's Statement, instead describing in
lengthy detail the 'contextual and structural background'
surrounding Defendant's stated facts."); *Learnard v. Inhabitants
of the Town of Van Buren*, 182 F. Supp. 2d 115, 119-20 (D. Me.

21

2002) (disregarding the plaintiff's responsive factual statements in part because many did "not actually controvert the [d]efendants' facts that they purport[ed] to address"). The Court's review of Plaintiff's Counterstatement of Disputed Facts reveals a pattern of failing to properly controvert DHS's asserted facts, in which he often writes "[u]ndisputed, subject to clarification" before providing "additional, non-responsive facts," *Toomer*, 266 F. Supp. 3d at 191; or "[d]isputed in part" based, not on an actual disputed fact, but on a disingenuous objection to "an incomplete paraphrase of the cited exhibit[,]" *see generally* SOMF, ECF No. 47-4; *Gibson*, 2002 WL 32713321, at *1 n.1 ("Such excess, unresponsive verbiage is a clear violation of both the letter and spirit of Local Rule [7(h)].").

Mr. Richardson only raised the topic of his retirement annuity calculation in response to the following fact proffered by DHS: "By email dated October 12, 2012, Plaintiff was advised that the FEHB bill was cancelled." SOMF, ECF No. 47-4 at 22 ¶ 66. He replied that this was "[u]ndisputed, subject to clarification[,]" and then supplied unresponsive "factual context," writing that "[t]his statement [did] not reflect full context of range of thousands of dollars of pay and benefits mistakes [he] faced" upon his return to the office, and included the issue of his retirement annuity as part of this "context." *See id.* (replying, irrelevantly, that "[o]n October 17, 2017,

[AJ] Mehrring ordered the Agency [to] accurately account from and pay Plaintiff's retirement annuity correctly[.]"). Not only does this information not controvert DHS's asserted fact, but neither did Mr. Richardson properly identify the retirement pay issue in his paragraphed list of the genuine issues of material fact at the end of his Counterstatement of Disputed Facts. *See Graves v. Dist. of Columbia*, 777 F. Supp. 2d 109, 111–12 (D.D.C. 2011) ("Where the opposing party has additional facts that are not directly relevant to its response, it must identify such facts in consecutively numbered paragraphs at the end of its responsive statement of facts."). Thus, regardless of whether the issue was brought "to the Magistrate Judge's attention in" Plaintiff's opposition, *see* Pl.'s Objs., ECF No. 53 at 4; Magistrate Judge Faruqui was not required to consider this "unhelpful" context in the SOMF that did not "admit, deny, or qualify" DHS's proffered fact about the FEHB bill, *see Gibson*, 2002 WL 32713321, at *1 n.1; *Learnard*, 182 F. Supp. 2d at 120.

Accordingly, Magistrate Judge Faruqui did not err in his determination of the undisputed facts. Instead, the R. & R. correctly summarizes the undisputed facts from the "Corrected FEHB" and "Audit of Leave" sections of the SOMF, *see* R. & R., ECF No. 52 at 7; in which it was undisputed that Defendant "resolved" the FEHB billing issues and notified Mr. Richardson that the FEHB bill had been cancelled, *see* SOMF, ECF No. 47-4 at

22 ¶¶ 65-66. Magistrate Judge Faruqui also supplemented the
facts from the SOMF with evidence indicating that DHS
"ultimately paid Plaintiff for [the forty hours of] missing
time" from his paycheck. *See* R. & R., ECF No. 52 at 7 (citing
Def.'s Ex. L, ECF No. 41-35 at 11; Def.'s Ex. K-1, ECF No. 41-33
at 8). In sum, Magistrate Judge Faruqui "properly deemed
undisputed those facts which the parties explicitly stated were
not in dispute and those facts which the parties failed to
adequately controvert, and he appropriately filled in factual
gaps by scrutinizing the record submitted to the Court." *Toomer*,
266 F. Supp. 3d at 191. The Court therefore overrules Mr.
Richardson's objection to the R. & R.'s characterization of the
undisputed facts as to the financial issues between him and DHS.[6]

### B. **Magistrate Judge Faruqui Correctly Granted Summary Judgment on Mr. Richardson's Rehabilitation Act Claim**

The Rehabilitation Act of 1973 "provides that '[n]o
otherwise qualified individual with a disability' shall be
discriminated against by a federal agency 'solely by reason of .
. . his disability.'" *Ward v. McDonald*, 762 F.3d 24, 28 (D.C.

---

[6] In addition, as DHS notes, the "dispute related to Plaintiff's
retirement pay calculation, which resulted in an overpayment, is
related to [his] dispute with the Office of Personnel
Management[ ("OPM"),]" not DHS. *See* Def.'s Resp., ECF No. 54 at
4 (citing Pl.'s Ex. SS, ECF No. 47-49, Order & Summ. of Status
Conference, *Richardson v. OPM*, DC-0845-16-0798-I-1 (MSPB Oct.
17, 2016)). The record indicates that OPM resolved the
overpayment issue in Mr. Richardson's favor. *See* Pl.'s Ex. RR,
ECF No. 47-48 at 51.

Cir. 2014) (quoting 29 U.S.C. § 794(a)). The "basic tenet" of
the Act is that the federal government "must take reasonable
affirmative steps to accommodate the handicapped, except where
undue hardship would result." *Barth v. Gelb*, 2 F.3d 1180, 1183
(D.C. Cir. 1993). To prevail on a failure to accommodate claim,
a plaintiff bears the burden of producing sufficient evidence
that: (1) he was a qualified individual with a disability; (2)
his employer had notice of his disability; and (3) the employer
denied his request for a reasonable accommodation. *See Ward*, 762
F.3d at 31. Here, only the third element is disputed. *See* R. &
R., ECF No. 52 at 11. To establish that his request was denied,
Mr. Richardson must also show that DHS "in fact ended the
interactive process or that it participated in the process in
bad faith." *Minter v. Dist. of Columbia*, 809 F.3d 66, 69 (D.C.
Cir. 2015) (quoting *Ward*, 762 F.3d at 32).

Magistrate Judge Faruqui recommended that the Court dismiss
Mr. Richardson's Rehabilitation Act claim because he concluded
that: (1) Plaintiff was not denied reasonable accommodations,
and (2) DHS was not responsible for the breakdown in the
interactive accommodation process. *See* R. & R., ECF No. 52 at
12-14, 16-19. Mr. Richardson objects to these portions of the R.
& R. *See* Pl.'s Objs., ECF No. 53 at 5-11 (objections two and

three). The Court reviews these objections de novo,[7] and for the reasons below, adopts the Magistrate Judge's recommendations.

### 1. Mr. Richardson Was Not Denied Reasonable Accommodations

"[W]hile a plaintiff may prove discrimination by showing that his employer failed to provide a reasonable accommodation[] [for] his disability, . . . an employer need only provide an accommodation that is responsive to and tailored to a specific disability." *Edwards v. Gray*, 7 F. Supp. 3d 111, 115 (D.D.C. 2013) (citation and internal quotation marks omitted). An "employer is not required to provide an employee that accommodation he requests or prefers[;] the employer need only provide some reasonable accommodation." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) (citation omitted). If accommodation is not possible in the employee's current position, then "the federal employer must consider the feasibility of reassigning the disabled employee to a vacant position." *Norden v. Samper*, 503 F. Supp. 2d 130, 145–46 (D.D.C. 2007). However, there are "[r]ecognized constraints on an employer's obligation to reassign a disabled employee[,]" as "[a]n employee need not be reassigned if no vacant [qualifying]

---

[7] Of note, while DHS argues for the general application of clear error review to all of Plaintiff's objections, it only provides specific reasons for applying this standard to his fourth and fifth objections. *See* Def.'s Resp., ECF No. 54 at 2–3.

position exists," and "employers are not required to 'bump' an employee, or to create a new position" solely for the purposes of an accommodation. *Aka*, 156 F.3d at 1305. In addition, "when an employee requests a transfer as reasonable accommodation and the employer offers alternative reasonable accommodation[s], which the employee then refuses, the employer cannot be liable for failing to reasonably accommodate the employee by not transferring him to another position." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996).

Mr. Richardson objects to Magistrate Judge Faruqui's conclusion that "the six accommodations proposed by Defendant were reasonable and tailored to enable Plaintiff to perform his essential duties." Pl.'s Objs., ECF No. 53 at 5 (citing R. & R., ECF No. 52 at 12). While Plaintiff claimed that the proffered accommodations failed his medical needs because Dr. Babcock had "characterized reassignment as 'medically necessary,'" R. & R., ECF No. 52 at 14; Magistrate Judge Faruqui called this argument "toothless" because of "Dr. Babcock's lack of knowledge [about] the proposed accommodations at the time of her recommendation and by her later testimony that she would have 'been very pleased with those accommodations'" if she had known about them, *id.* (citing Def.'s Ex. H, ECF No. 41-25 at 33:24-34:9). The Magistrate Judge concluded that "Plaintiff could not demonstrate

that Dr. Babcock would have testified differently about the proposed accommodations when they were made." *Id.*

Mr. Richardson claims there is a genuine issue of material fact because Magistrate Judge Faruqui "speculated that Plaintiff could not demonstrate Dr. Babcock would have testified differently" about DHS's proposed accommodations when they were made in 2012, which renders the issue "not appropriate for summary judgment." Pl.'s Objs., ECF No. 53 at 5-6. DHS responds that "[t]he record demonstrates that Dr. Babcock testified she would have considered the Agency's offered accommodations adequate to address Plaintiff's medical condition." Def.'s Resp., ECF No. 54 at 4. The Court agrees with DHS.

The record indicates that Dr. Babcock submitted two letters on Mr. Richardson's behalf, recommending "[r]eassignment to a position that is not predominantly sedentary." *See* Pl.'s Ex. Z, ECF No. 47-31 at 2; Def.'s Ex. G-8, ECF No. 41-21 at 2. Yet, in her deposition in 2019, Dr. Babcock testified that at no point was she made aware of the accommodations DHS offered Mr. Richardson on November 23, 2012. *See* Def.'s Ex. H, ECF No. 41-25 at 32:9-12; Def.'s Ex. G-6, ECF No. 41-19 at 3-4. Specifically, the following exchange occurred between Dr. Babcock and Defendant's attorney in her deposition:

> Q: Now, using all six of those options at the same time, rest breaks, the empty space to stretch out, to change his work time so he

> could go to the gym, an ergonomic specialist
> to come in to work with him on the work space
> that he -- setting it up in the way that works
> for him better, and the ability to take the
> leave for his rehab appointments, would all of
> those together make it so that he could
> continue doing his sedentary job?
>
> A: I would have been very pleased with those
> accommodations if I had known about them.

Def.'s Ex. H, ECF No. 41-25 at 33:24-34:9. This dialogue

provides sufficient facts from which a jury could reasonably

conclude that "if [Dr. Babcock] had known about" the six

accommodations in 2012 when DHS proposed them, *id.;* she would

have considered them "adequate to address Plaintiff's medical

condition[,]" Def.'s Resp., ECF No. 54 at 4. Indeed, Plaintiff

offers only "speculation and conjecture" that Dr. Babcock would

testify differently before a jury today than she did in her 2019

deposition regarding her medical opinion from 2012, which are

"insufficient to avoid summary judgment[.]" *See Hancock v.*

*Washington Hosp. Ctr.*, 908 F. Supp. 2d 18, 26 (D.D.C. 2012).

Although DHS did not offer every accommodation requested, it did

proffer reasonable alternatives, "which is all the law requires

it to do." *See Doak v. Johnson*, 19 F. Supp. 3d 259, 275 (D.D.C.

2014); *Aka*, 156 F. Supp. 3d at 1305. Accordingly, the Court

**ADOPTS** the R. & R.'s finding that Plaintiff was not denied

reasonable accommodations, *see* ECF No. 52 at 12-14.

### 2. DHS Was Not Responsible for the Breakdown in the Interactive Accommodation Process

The Court next considers Mr. Richardson's objection that there is a genuine issue of material fact regarding whether DHS "participated in the reasonable accommodation request process in bad faith" and was thus responsible for the breakdown in the interactive accommodation process. Pl.'s Objs., ECF No. 53 at 6.

To prove the denial of a reasonable accommodation request, a plaintiff must show "either that the [agency] in fact ended the interactive process or that it participated in the process in bad faith." *Minter*, 809 F.3d at 69. "Few disabilities are amenable to one-size-fits-all accommodations[,]" and "[t]he process contemplated is 'a flexible give-and-take' between employer and employee 'so that together they can determine what accommodation would enable the employee to continue working.'" *Ward*, 762 F.3d at 32 (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005)). "[C]ourts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." *Id.* (quoting *Sears*, 417 F.3d at 805). This analysis considers whether a party "obstructs or delays the interactive process" or "fails to communicate, by way of initiation or response," and should "isolate the cause of the breakdown and then assign

responsibility." *Id.* (quoting *Sears*, 417 F.3d at 805). "An employee's rejection of an employer's proposed reasonable accommodation is one example of bad-faith termination of the interaction process." R. & R., ECF No. 52 at 16 (citing *Senatore v. Lynch*, 225 F. Supp. 3d 24, 35 (D.D.C. 2016)). In contrast, employers can show good faith by meeting with the employee, requesting information about his condition and limitations, asking the employee what he specifically wants, showing signs of having considered the employee's request, and discussing alternatives when the request is burdensome. *See Woodruff v. LaHood*, 777 F. Supp. 2d 33, 41–42 (D.D.C. 2011) (citation omitted). Ultimately, the "failure to provide [an employee] with exactly the accommodation [he] requested is not, in and of itself, evidence that the [employer] did not engage in good faith in the interactive process." *Morris v. Jackson*, 994 F. Supp. 2d 38, 49 (D.D.C. 2013).

Mr. Richardson objects to Magistrate Judge Faruqui's rejection of the possibility that DHS "exhibited bad faith during the [interactive] process" and claims there is a genuine dispute of material fact on this issue. *See* Pl.'s Objs., ECF No. 53 at 7, 11. Mr. Richardson alleges he is not "tak[ing] issue with the Magistrate finding some indicators of good faith by Defendant" but is taking "issue with the Magistrate not properly

recognizing that [DHS] also engaged in statements and actions demonstrating bad faith." *Id.* at 7.

To support his objection, Mr. Richardson proffers three purported instances of bad faith by Defendant, to which DHS responds that each are "without merit." Def.'s Resp., ECF No. 54 at 5. First, Plaintiff points to statements made by AC Tomsheck and his supervisors after his return to work to argue that DHS demonstrated bad faith by "immediately eliminating reassignment as a possible accommodation as early as August 2012 without fairly considering it[.]" *See* Pl.'s Obj.'s, ECF No. 53 at 7-8 (quoting AC Tomsheck: "IPD was the best place for Plaintiff[;]" Mr. Matta: "John, you're staying in IPD[;]" and Mr. Lid: "[W]hy don't you just retire retire?"; and claiming these statements exhibited "a 'closed mind' to [his] request for reassignment").

However, "the record is replete with evidence that the Agency did consider reassignment" despite these alleged statements. Def.'s Resp., ECF No. 54 at 5 (citing SOMF, ECF No. 47-4 at 14 ¶ 34, 15-16 ¶¶ 37-40). For example, on August 16, 2012, in an email following his initial phone conversation with Mr. Richardson about his request for accommodations, Mr. Matta stated: "[I]f you are interested in moving to another IA division, I will support your movement to another division . . . I suggest you identify the component and specific job you are interested in[,] and I will do everything I can to facilitate a

reassignment." Pl.'s Ex. G, ECF No. 47-12 at 1. In another email
on September 7, 2012, Mr. Matta wrote to Plaintiff: "Should you
wish to move within IA or to another component, I will <u>try</u> to
facilitate." Def.'s Ex. I-1, ECF No. 41-26 at 4 (emphasis in
original). These statements were made "early in the
accommodation process" and do not indicate that management
"view[ed] reassignment negatively as an option during the early
stages of the interactive process[.]" Pl.'s Objs., ECF No. 53 at
8.

The record demonstrates that DHS engaged with the
possibility of reassignment throughout the accommodation
process. In January 2013, "Defendant granted Plaintiff's request
for reconsideration despite his refusal to attempt the six
accommodations offered[,]" R. & R., ECF No. 52 at 17 (citing
SOMF, ECF No. 47-4 at 14 ¶ 34); and initiated two searches for
"vacant funded positions in the local commuting area" to which
Mr. Richardson could be reassigned, *see* Def.'s Ex. G-9, ECF No.
41-22 at 3; Def.'s Ex. E-1, ECF No. 41-12 at 7-8 ¶ 17 (noting
that both searches yielded no vacancies). Given that "[a]n
employee need not be reassigned if no vacant position exists,"
*Aka*, 156 F.3d at 1305; the Court is therefore unpersuaded that a
jury could reasonably conclude that the above statements from IA
leadership were sufficient to indicate bad faith and overcome
the other evidence of good faith. Moreover, DHS was not, as Mr.

Richardson argues, required to consider reassignment or any of his preferred accommodations *before* other alternatives. *See Norden*, 503 F. Supp. 2d at 145-46 (concluding that "[i]f accommodation cannot be made in the employee's current position," only then must the employer "consider the feasibility of" reassignment); *Aka*, 156 F.3d at 1305 (negating preferential treatment of the accommodation an employee "prefers").

Mr. Richardson's second purported indication of bad faith is "Defendant's passivity and indifference in the initial two months" following his request for accommodations on August 3, 2012. Pl.'s Objs., ECF No. 53 at 9. He claims that during those two months, DHS did not meaningfully respond to his request and that this "earliest reaction . . . is more important than [its] later actions" in exploring possible accommodations. *Id.* at 9-10. The Court disagrees, as the record indicates Mr. Matta immediately engaged with Mr. Richardson via phone and email after receiving his August 3, 2012 email. *See* SOMF, ECF No. 47-4 at 4 ¶ 11. In addition, Plaintiff fails to cite any authority proving that an employer's earlier reactions are weighed more heavily than its later actions in the interactive process, when in fact the duty to accommodate is an evolving and "continuing duty that is not exhausted" by any one effort, *Norden*, 503 F. Supp. 2d at 145; and the evidence indicates Mr. Richardson's request "was still under consideration" throughout 2013, *see*

*Ward*, 762 F.3d at 33 n.3 (affirming summary judgment, despite the plaintiff's testimony that her accommodation request was denied at an earlier meeting, when a follow-up letter from her employer showed her request was still pending).[8]

Mr. Richardson's final proffer of bad faith is DHS's "failure to truly consider telework as an option or list it as a possibility from the [JAN]." Pl.'s Objs., ECF No. 53 at 10. As with his argument regarding reassignment, Mr. Richardson claims that DHS "showed a closed mind to telework by rejecting it (quickly) without ever really explaining why." *Id.* at 11. However, the only evidence he points to to support this statement is Mr. Matta's MSPB testimony about telework, in which Mr. Matta stated that if an employee "were unable to focus, concentrate[,] and look at a computer monitor and type, it was irrelevant" whether the work was performed at the office or at home. *Id.* at 10; Pl.'s Ex. B, ECF No. 47-7 at 185:17-186:4. However, this statement does not indicate that Defendant "quickly" denied telework as a reasonable accommodation, much

---

[8] The Court notes similarities between this portion of the objection and Plaintiff's opposition brief. *See* Pl.'s Opp'n, ECF No. 47 at 27 ("The evidence directly shows that between August 3, 2012 and November 23, 2012, the Agency did not take a single proactive measure to ensure that Plaintiff's request was properly processed, much less even considered."). Had the Court not reached the above de novo conclusion, it also believes this portion of Plaintiff's objection could be overruled under clear error review for attempting to "rehash" this prior argument. *Shurtleff v. EPA*, 991 F. Supp. 2d 1, 8 (D.D.C. 2013).

less never considered it throughout the interactive process, and it also does not raise an inference of bad faith. *See Morris*, 994 F. Supp. 2d at 49 (finding that the breakdown in the interactive process may have in fact been "caused by [the plaintiff's] insistence on telecommuting, but no evidence show[ed] it was caused by any misfeasance or lack of good faith" by her employer). As Mr. Richardson concedes, all that was required of DHS was to act in good faith by considering his telework request, alongside the reasonable available alternatives. *See id.* at 47; Pl.'s Objs., ECF No. 53 at 10.

Because Mr. Richardson's three arguments do not raise a genuine dispute as to DHS's purported bad faith, the Court **ADOPTS** this portion of the R. & R, *see* ECF No. 52 at 16-19. Moreover, because the Court agrees with Magistrate Judge Faruqui that: (1) Mr. Richardson was not denied reasonable accommodations; and (2) DHS was not responsible for the breakdown in the interactive accommodation process, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Mr. Richardson's Rehabilitation Act claim, *see* ECF No. 41.

### C. Magistrate Judge Faruqui Correctly Granted Summary Judgment on Mr. Richardson's Retaliation Claim

The Court next considers Plaintiff's three objections to the portions of the R. & R. recommending denial of his Title VII retaliation claim. *See* R. & R., ECF No. 52 at 22-28.

Title VII makes it unlawful for an employer to retaliate against an employee because he opposed an unlawful employment practice and asserted his Title VII rights. *See* 42 U.S.C. § 2000e-3(a); *Jeffries v. Barr*, 965 F.3d 843, 860 (D.C. Cir. 2020). Where the plaintiff lacks direct evidence of retaliation, he must proceed under the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Iyoha v. Architect of the Capitol*, 927 F.3d 561, 574 (D.C. Cir. 2019). This framework requires the plaintiff to first plead his prima facie case, *see McDonnell Douglas*, 411 U.S. at 802; which requires establishing that: (1) "he engaged in statutorily protected activity;" (2) "he suffered a materially adverse action by his employer;" and (3) "a causal link connects the two[,]" *Iyoha*, 927 F.3d at 574 (quoting *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009)). Upon this showing, "the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions[,]" and if it does so, the burden returns to the plaintiff to prove that the "asserted non-retaliatory reason was mere pretext for retaliation." *Carter-Frost v. Dist. of Columbia*, 305 F. Supp. 3d 60, 73 (D.D.C. 2018). The "sole remaining question" becomes "whether, based on all the evidence, a reasonable jury could conclude that [the] proffered reason was" not the real reason for the adverse action

"and that the employer intentionally . . . retaliated against the employee." *Pardo-Kronemann v. Donovan,* 601 F.3d 599, 604 (D.C. Cir. 2010); *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015); *see also Jones*, 557 F.3d at 677 (noting that "the burden-shifting framework disappears" once an employer carries its burden, and courts must consider "whether a reasonable jury could infer . . . retaliation from all the evidence").

"[O]nly a retaliatory act that is 'materially adverse' to the plaintiff is actionable[.]" *Chambers v. Dist. of Columbia*, 35 F.4th 870, 876 (D.C. Cir. 2022) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 67-68, 126 S. Ct. 2405 (2006)), *judgment entered*, No. 19-7098, 2022 WL 2255692 (D.C. Cir. June 23, 2022). Courts determine whether an action is materially adverse using an objective standard, *see id.*; that is, "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination[,]" *White*, 548 U.S. at 57. Materially adverse actions are thus "objectively tangible harm[s]," *Forkkio v. Powell,* 306 F.3d 1127, 1131 (D.C. Cir. 2002); and not "those petty slights or minor annoyances that often take place at work[,]" *White*, 548 U.S. at 68; *see also Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1, 13 (D.D.C. 2019) (requiring the action to affect "the terms, conditions, or privileges of employment or future employment opportunities").

Magistrate Judge Faruqui considered the material adversity of three actions before "moving onto the non-retaliatory reasons offered" by DHS for them: (1) the alleged denial of reasonable accommodations; (2) Plaintiff's placement on DNA status; and (3) his termination. *See* R. & R., ECF No. 52 at 23. First, Magistrate Judge Faruqui concluded that "[b]ecause Defendant provided reasonable accommodations[,] . . . no materially adverse action arose" in this regard. *Id.* at 23. Second, because he found "a question as to material adversity of the DNA notice," Magistrate Judge Faruqui examined DHS's proffered reason for the notice and determined it was not pretextual. *Id.* at 25-27. Lastly, because DHS conceded that Plaintiff's termination was materially adverse, Magistrate Judge Faruqui assessed its proffered non-retaliatory rationale—Mr. Richardson's "excessive absenteeism"—to conclude that he failed to prove pretext. *Id.* at 27-28. Plaintiff's fourth, fifth, and sixth objections pertain to these portions of the R. & R. *See* Pl.'s Objs., ECF No. 53 at 11-19. For the reasons below, the Court adopts Magistrate Judge Faruqui's three recommendations as to Mr. Richardson's retaliation claim.

> **1. Because DHS Provided Reasonable Accommodations to Mr. Richardson, He Cannot Dispute the "Material Adversity" of This Action**

In his fourth objection, Mr. Richardson objects to Magistrate Judge Faruqui's conclusion that DHS provided him

reasonable accommodations and that no materially adverse action arose in this regard for purposes of his retaliation claim. *See id.* at 13-14; R. & R., ECF No. 52 at 23. He argues that "evidence from Dr. Babcock on the issue of what would be considered reasonable accommodations should not be disregarded to the point of deciding that no genuine issue of material fact was presented by whether reasonable accommodations were granted." *Id.* at 13. DHS argues that this objection should be reviewed for clear error, as it amounts to "a cut and paste" from Plaintiff's Amended Opposition. Def.'s Resp., ECF No. 54 at 2. The Court agrees.

"Under the clearly erroneous standard, the magistrate judge's decision is entitled to great deference and is clearly erroneous only if on the entire evidence the court is left with the definite and firm conviction that a mistake has been committed." *Buie*, 2019 WL 4345712, at *3 (citation and internal quotation marks omitted). Courts must review an R. & R. in line with this standard when a party "simply reiterates his original arguments," *Houlahan*, 979 F. Supp. 2d at 88; or attempts to "merely rehash an argument presented [to] and considered by the magistrate judge[,]" *Shurtleff*, 991 F. Supp. 2d at 8.

The substance of Mr. Richardson's fourth objection is a reiteration of arguments already presented to and considered by Magistrate Judge Faruqui. *Compare* Pl.'s Opp'n, ECF No. 47 at 12

("Any attempt to use Dr. Babcock's testimony—almost seven (7) years after her evaluation of Plaintiff—regarding *hypothetical accommodations* as a way to contradict her real-time, unwavering, definitive medical conclusions based on real-time physical examinations, numerous conversations with Plaintiff, and diagnostic tests she performed on him, is nonsensical." (emphasis in original)), *with* Pl.'s Objs., ECF No. 53 at 13 (disagreeing with Magistrate Judge Faruqui's conclusion because "Defendant's attempt to use Dr. Babcock's testimony almost seven (7) years after her evaluation of Plaintiff regarding hypothetical accommodations is nonsensical, considering her unwavering, definitive medical conclusions of Plaintiff's conditions based on her physical examinations and her interactions with Plaintiff, as well as diagnostic tests she performed and the relevant medical records"). This repetitive wording indeed indicates "a cut and paste" job that does not persuade the Court that Magistrate Judge Faruqui made a definite mistake. Def.'s Resp., ECF No. 54 at 2. Accordingly, the Court defers to Magistrate Judge Faruqui's decision and **ADOPTS** this portion of the R. & R., *see* ECF No. 52 at 23-24.[9]

---

[9] Moreover, for the same reasons the Court found no genuine dispute of material fact regarding Dr. Babcock's testimony under the second objection and adopted the R. & R.'s conclusion that Mr. Richardson was not denied reasonable accommodations under the Rehabilitation Act, *see supra* section IV.B.1.; so too does the Court conclude that this Title VII retaliation objection

**2. Mr. Richardson Has Failed to Produce Sufficient Evidence from Which a Reasonable Jury Could Conclude That DHS's Stated Reasons for the DNA Notice Are Pretextual**

In his fifth objection, Plaintiff objects to Magistrate Judge Faruqui's conclusion that DHS proffered a legitimate, non-retaliatory reason for the DNA notice that he failed to show is pretextual. *See* Pl.'s Objs., ECF No. 53 at 15-16; Def.'s Resp., ECF No. 54 at 9 ("Plaintiff's argument is whether the Magistrate Judge erred in finding whether [he] demonstrated pretext."). Mr. Richardson also argues that the DNA notice harmed him, such that summary judgment should be precluded. *See* Pl.'s Objs., ECF No. 53 at 14. However, the Court rejects these "harm" arguments, as Magistrate Judge Faruqui already concluded, after analyzing the record, that "a genuine dispute of fact exists as to whether Plaintiff suffered harm because of the DNA notice." R. & R., ECF No. 52 at 25. Because the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has instructed that on motions for summary judgment, "a district court need not consider whether a plaintiff has actually satisfied the elements of a prima facie case if the defendant has offered a legitimate, non-discriminatory reason for its actions[,]" *Musgrove*, 775 F. Supp.

---

fails on the same grounds, *see* R. & R., ECF No. 52 at 24 ("[T]he Court's conclusion that [P]laintiff's Rehabilitation Act claim fails . . . defeats [his] retaliation claim based on the same alleged denial of reasonable accommodation." (quoting *Lester v. Natsios*, 290 F. Supp. 2d 11, 34 (D.D.C. 2003))).

2d at 169 (citing *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)); the Court only reviews DHS's stated reason for the notice "to determine if it was pretextual[,]" R. & R., ECF No. 52 at 25. Although DHS argues for clear error review, Def.'s Resp., ECF No. 54 at 2-3; the Court applies de novo review since Plaintiff's prior arguments about the notice were in the context of his hostile work environment claim, not his retaliation claim, *see* Pl.'s Opp'n, ECF No. 47 at 38-39.

A legitimate, non-retaliatory reason is a "clear and reasonably specific" explanation for the employer's actions, *i.e.*, "produc[ing] evidence of [those] legitimate [ ] reasons." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256-58, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) (internal quotation marks omitted). "[I]n all instances where a defendant has asserted a legitimate, non-[retaliatory] reason for its conduct, the Court shall evaluate all of the evidence in the record" when assessing the legitimacy of that reason. *Washington v. Chao*, 577 F. Supp. 2d 27, 39 (D.D.C. 2008). On summary judgment, the central question reduces to whether the employee has "produced sufficient evidence for a reasonable jury to find that the employer's asserted . . . non-retaliatory reason was not the actual reason and that the employer intentionally . . . retaliated against the employee." *Walker*, 798 F.3d at 1092. Upon the articulation of a legitimate reason for the adverse action,

43

the burden shifts back to the plaintiff to rebut the defendant's stated reason as pretextual. *See Musgrove*, 775 F. Supp. 2d at 170. The plaintiff can "carry this burden by showing" that the "reason offered by [the] defendant is false," *id.* (citing *Montgomery v. Chao*, 546 F.3d 703, 707 (D.C. Cir. 2008)); or by "presenting enough evidence to allow a reasonable trier of fact to conclude that the employer's proffered explanation is unworthy of credence[,]" *id.* (quoting *Desmond v. Mukasey*, 530 F.3d 944, 962 (D.C. Cir. 2008)).

Magistrate Judge Faruqui concluded that DHS's "proffered reason for the DNA placement—that Plaintiff's supervisors believed that he posed a risk to other employees—is supported by" the record, R. & R., ECF No. 52 at 25; and the Court agrees. In November 2012, Mr. Matta advised an ER Specialist of his and Ms. Keverline's concerns about Plaintiff. *See* Def.'s Ex. N, ECF No. 41-37 at 2. Mr. Matta expressed his concern that Mr. Richardson's "perceived fear and paranoia [ ] provid[ed] him an altered view of reality[,]" and that "his erratic behavior [was] cause for concern." *Id.* at 5. He added that Mr. Richardson's "email responses and actions" had created "anxiety" in the workplace, and he feared Mr. Richardson was "demonstrating warning signs that [were] consistent with other workplace violence episodes" that "could place the staff at risk." *Id.* at 6. Ms. Keverline also observed that Plaintiff's behaviors were

raising "the stress level in the office." *Id.* at 4. Then, on January 22, 2013, Mr. Richardson forwarded an email to Mr. Lid in which he stated that he belonged to two high-risk categories for suicide—service member and member of law enforcement—and was not operating under optimal conditions. *See* Def.'s Ex. O, ECF No. 41-38 at 8. Despite later denying having suicidal thoughts, *see id.* at 4; and even assuming that none of his supervisors "were afraid of [him] or felt physically threatened by him[,]" Pl.'s Objs., ECF No. 53 at 16; based on the record, the Court adopts the Magistrate Judge's conclusion that DHS has asserted a legitimate, non-retaliatory reason for placing him on DNA status, *see* R. & R., ECF No. 52 at 26.

Mr. Richardson claims that DHS issued the DNA notice to "perpetuat[e] [its] false narrative that [he] was somehow a safety threat" so that it had a reason to remove him. Pl.'s Objs., ECF No. 53 at 16. In an attempt to establish pretext, Plaintiff argues that because DHS "has been unable to provide the identity of those responsible for the DNA status[,]" the Court should cast doubt on whether DHS "genuinely believed" he posed a risk to others. Pl.'s Objs., ECF No. 53 at 14-15. Even if DHS is unable to pinpoint the officials involved, Plaintiff still needs to prove that the "actual reason" for the decision was retaliatory. *See Walker*, 798 F.3d at 1092. The Court agrees that "[w]ho made the DNA decision is of little consequence[,]"

as "[w]hy it was made is what matters[,]" R. & R., ECF No. 52 at
27 n.11; and nothing in this "minor inconsistency" supports an
inference of retaliation, *Minter*, 809 F.3d at 71; *see Alexander
v. Tomlinson*, 507 F. Supp. 2d 2, 19 (D.D.C. 2007) (finding that
a discrepancy in a supervisor's testimony "may cast some doubt
on [his] credibility," but was insufficient to infer a
retaliatory motive for the plaintiff's termination). Moreover,
nowhere in his objection does Plaintiff attempt to create "a
causal link" between the DNA notice and protected activity,
which is fatal to his retaliation claim. *See Iyoha*, 927 F.3d at
574. Accordingly, the Court **ADOPTS** the R. & R.'s findings as to
the DNA notice, *see* ECF No. 52 at 25-27.

### 3. Mr. Richardson Has Failed to Produce Sufficient Evidence from Which a Reasonable Jury Could Conclude That DHS's Stated Reasons for His Termination Are Pretextual

In his sixth objection, Mr. Richardson objects to two of
Magistrate Judge Faruqui's conclusions as to his termination:
(1) DHS proffered a non-retaliatory reason—his "excessive
absenteeism"—that he failed to show is pretextual, and (2) he
"failed to establish a causal connection between the protected
activity and termination." Pl.'s Objs., ECF No. 53 at 17; R. &
R., ECF No. 52 at 27 n.12-28. To support pretext and the
requisite causal connection, Mr. Richardson directs the Court to
an October 2012 email from AC Tomsheck sent to agency leaders,

46

in which he noted "Plaintiff's interactions with the Agency, including [his] past complaints and that some 'ha[d] asked that [AC Tomsheck] take action to remove [Plaintiff] from the workplace.'" R. & R., ECF No. 52 at 28 n.12 (quoting Pl.'s Ex. U, ECF No. 47-26 at 3-4). He argues that "this email demonstrates sufficient pretext from a high-level Agency official within Plaintiff's chain-of-command, even if [AC Tomsheck] was not the proposing or deciding official" of his termination. Pl.'s Objs., ECF No. 53 at 18. He also argues that this email creates a genuine issue of material fact regarding a causal connection between his EEO activity and his termination. *Id.* at 17-18. The Court reviews this objection de novo.

Because Mr. Richardson's termination was materially adverse, *see Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) ("An adverse employment action is a significant change in employment status, such as hiring[ or] firing[.]" (citation and internal quotation marks omitted)); the Court follows Magistrate Judge Faruqui's approach in first analyzing DHS's "proffered non-retaliatory rationale[,]" *see* R. & R., ECF No. 52 at 27-28 ("At this stage, Plaintiff's *prima facie* case falls away and the question becomes whether [he] can show by a preponderance of the evidence that Defendant's given rationale was pretextual."); *Jeffries*, 965 F.3d at 860 (instructing district courts, "where appropriate, to avoid the 'unnecessary sideshow' of the first

two prongs, . . . and proceed to [ ] the question of pretext"). DHS has stated that it terminated Mr. Richardson due to excessive absenteeism. *See* Def.'s Ex. P-1, ECF No. 41-40 at 2; Def.'s Ex. P-2, ECF No. 41-41 at 2. In the letter proposing termination, DHS informed Plaintiff that from September 23, 2012 to September 7, 2013, he used "69.5 hours of annual leave, 165 hours of sick leave, and 1016 hours of [LWOP] . . . outside of the hours . . . [he had] invoked under the [FMLA]." Def.'s Ex. P-1, ECF No. 41-40 at 2. The letter also noted that Plaintiff's "recurrent absences [had] continued beyond a reasonable time and [had] placed burdens on [his] supervisor in maintaining continuity of work . . . [and] on other employees who [had] to cover and complete work that would otherwise [have been] assigned to" Mr. Richardson if he had been present. *Id.* Mr. Richardson has not disputed DHS's accounting of his absenteeism in this letter. *See* SOMF, ECF No. 47-4 at 30 ¶ 90. After reviewing the record, Mr. Joseph Gaudiano, the deciding official, concluded that "the reason as articulated in the proposal letter [was] supported by the evidence" and issued notice of Mr. Richardson's removal, effective March 8, 2014. *See* Def.'s Ex. P-2, ECF No. 41-41 at 2; Pl.'s Ex. QQ, ECF No. 47-47 at 350:16-352:6. Mr. Richardson filed an appeal with the MSPB, and on September 22, 2017, the AJ affirmed the removal action. *See* Def.'s Ex. Q, ECF No. 41-43 at 2-3.

Based on this evidence, the Court adopts Magistrate Judge Faruqui's conclusion that DHS has asserted a legitimate, non-retaliatory reason for terminating Mr. Richardson, as it agrees that "absenteeism is a classic non-retaliatory reason for termination." *See* R. & R., ECF No. 52 at 28 (citing *Doak*, 19 F. Supp. 3d at 281). In his objection, Mr. Richardson now claims that this reason is "a smokescreen obscuring the true" reason for his removal, "as reflected by [AC] Tomsheck's [October 2012] email[,]" Pl.'s Objs., ECF No. 53 at 19; but the Court is not persuaded that this email "provide[s] sufficient evidence for a reasonable jury to infer retaliation[,]" *Jones*, 557 F.3d at 679. In his email, AC Tomsheck merely "la[id] out the facts" as to "the situation with John Richardson" in a discussion with other agency leaders regarding his request for accommodations. *See* Pl.'s Ex. U, ECF No. 47-26 at 3-4. AC Tomsheck noted that "[s]ome leadership in IA . . . ha[d] expressed concern for their safety and fear that [Plaintiff] ha[d] a potential for workplace violence" and asked that he "remove [Plaintiff] from the workplace." *Id.* at 4. Instead of indicating pretext, this email demonstrates another legitimate reason DHS may have had for later terminating Plaintiff, apart from absenteeism. Moreover, later in the email chain, AC Tomsheck expressed his concern for Mr. Richardson and "those in our workplace," while also stating that he really "wish[ed] there [was] something [he] could do to

help him." *Id.* at 3. These statements do not evince an illicit, retaliatory motive. *See Jeffries*, 965 F.3d at 860; *Doak*, 19 F. Supp. 3d at 281 (concluding that "no reasonable jury could conclude that chronic absenteeism" was "not the real reason for [the plaintiff's] termination" when the defendant's stated reason for her removal was "her repeated absences, her failure to comply with leave procedures, and the effect of both on her team"). And, in addition, AC Tomsheck was not the deciding official of Plaintiff's removal. *See Alexander*, 507 F. Supp. 2d at 19 (refusing to heavily consider a supervisor's credibility in the pretext analysis when he was "not the decisionmaker with respect to plaintiff's removal from his position").[10]

Although temporal proximity between an employee's protected activity and an employer's adverse action "is a common and often

---

[10] Mr. Richardson appears to attempt to cast doubt on Mr. Joseph Gaudiano, the official who made the removal decision, by pointing to Mr. Gaudiano's testimony from his appeal to the U.S. Merit Systems Protection Board ("MSPB"), in his objection pertaining to his placement on DNA status, rather than in his objection regarding termination. *See* Pl.'s Objs., ECF No. 53 at 17. To the extent Plaintiff may have intended to also use Mr. Gaudiano's testimony to object to Magistrate Judge Faruqui's conclusions regarding his termination, the Court rejects this attempt, as it does not read this testimony to support Plaintiff's statement that Mr. Gaudiano "would not have removed Plaintiff for absenteeism[.]" *Id.; see also* Pl.'s Ex. QQ, ECF No. 47-47 at 350:16-353:12. Moreover, the MSPB Administrative Judge considered this testimony before affirming Mr. Richardson's removal action, finding that DHS had "proven its excessive absenteeism charge by a preponderance of the evidence." *See* Def.'s Ex. Q, ECF No. 41-43 at 3, 5, 31-32.

probative form of evidence of retaliation[,]" *Walker*, 798 F.3d at 1092 (citing *Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009)); Magistrate Judge Faruqi concluded that Mr. Richardson failed to establish temporal proximity indicating retaliation, *see* R. & R., ECF No. 52 at 27-28 n.12; and the Court adopts that finding. Magistrate Judge Faruqi reasoned that the "correct timeline" for temporal proximity "is between when the employee's protected activity occurred and when the employer notified the employee of removal (at the earliest) or when the employee was removed (at the latest)." *See id.* (citing *Durant v. Dist. of Columbia*, 932 F. Supp. 2d 53, 73 (D.D.C. 2013)). Given that Mr. Richardson's protected activity and AC Tomsheck's email occurred in October 2012, but Plaintiff was not notified of his proposed removal until September 16, 2013, the Court concludes that there is insufficient temporal proximity to support a causal link indicating pretext. *See Taylor*, 571 F.3d at 1322 (summarizing cases noting that even between a two and three-month interval "is, as a matter of law, not close enough"). Moreover, Plaintiff does not proffer new facts or caselaw to challenge the specific timeline Magistrate Judge Faruqi used in his temporal proximity calculations. *See* Pl.'s Objs., ECF No. 53 at 18 (conceding "that removal was not actually started until a later date" after AC Tomsheck's email). Accordingly, the Court **ADOPTS** the R. & R.'s findings as to Plaintiff's termination, *see* ECF No. 52 at 27-28.

Because the Court agrees with Magistrate Judge Faruqui that (1) there is no genuine dispute as to "material adversity" since DHS provided Mr. Richardson reasonable accommodations, and (2) there is insufficient evidence of pretext to rebut DHS's stated reasons for placing him on DNA status and terminating him, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Mr. Richardson's retaliation claim under Title VII, *see* ECF No. 41.

### D. Magistrate Judge Faruqui Correctly Granted Summary Judgment on Mr. Richardson's USERRA Claims

Finally, Mr. Richardson objects to Magistrate Judge Faruqui's recommendation that the Court dismiss his claims under USERRA on the basis that DHS "acted consistently with [its] USERRA obligations" when it offered him reasonable accommodations "in the position for which he was qualified[.]" *See* Pl.'s Objs., ECF No. 53 at 20 (citing R. & R., ECF No. 52 at 32). Specifically, he argues that there is a genuine issue of material fact regarding whether DHS violated USERRA "by failing to make reasonable efforts to help him become qualified to perform the duties of vacant positions." *Id.* at 19.

"Enacted in 1994, 'USERRA is the latest in a series of laws protecting veterans' employment and reemployment rights.'" *Vahey v. Gen. Motors Co.*, 985 F. Supp. 2d 51, 57 (D.D.C. 2013). Courts have noted that USERRA's protections "should be broadly construed in favor of military service members as its purpose is

to protect such members." *Id.* (citation omitted). "Service members may bring two types of USERRA actions: (1) claims for failure to reemploy under 38 U.S.C. § 4312 (which does not require proof of intent); and (2) claims for intentional discrimination/retaliation under 38 U.S.C. § 4311[.]" *Jbari v. Dist. of Columbia*, 304 F. Supp. 3d 201, 205 (D.D.C. 2018). Here, Plaintiff objects only to Magistrate Judge Faruqui's conclusions as to his failure to reemploy claim.

As relevant here, USERRA provides that an employee returning from uniformed service "shall be promptly reemployed" as follows:

> In the case of a person who has a disability incurred in, or aggravated during, such service, and who (after reasonable efforts by the employer to accommodate the disability) is not qualified due to such disability to be employed in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service—
>
> (A)  in any other position which is equivalent in seniority, status, and pay, the duties of which the person is qualified to perform or would become qualified to perform with reasonable efforts by the employer; or
> (B)  if not employed under subparagraph (A), in a position which is the nearest approximation to a position referred to in subparagraph (A) in terms of seniority, status, and pay consistent with circumstances of such person's case.

38 U.S.C. § 4313(a)(3)(A)-(B). The position is known as the "escalator position." *Vahey*, 985 F. Supp. 2d at 57; *see* 20 C.F.R. § 1002.191 (defining the "escalator principle" as the requirement that a service member "be reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and other job perquisites, that he [ ] would have attained if not for the period of service"); 20 C.F.R. § 1002.225 (applying the "escalator principle" to disabled service members, who are entitled "to the escalator position he or she would have attained but for uniformed service" and requiring the employer to "make reasonable efforts to accommodate [the] disability and to help the employee become qualified to perform the duties of his or her reemployment [or escalator] position").

The Court reviews this objection only for clear error, as it amounts to "a cut and paste" from Plaintiff's Amended Opposition brief. Def.'s Resp., ECF No. 54 at 2. *Compare* Pl.'s Opp'n, ECF No. 47 at 32-33 ("[T]he Agency has not provided one iota of evidence that reemployment would impose an undue hardship, that its circumstances have so changed as to make such reemployment of Plaintiff impossible or unreasonable, or that Plaintiff's position was for a brief, nonrecurrent period and there was no reasonable expectation that such employment would continue indefinitely or for a significant period."), *with* Pl.'s Objs., ECF No. 53 at 20 ("Defendant offered no evidence that

reemployment of Plaintiff would impose an undue hardship, that
its circumstances have so changed as to make such reemployment
of Plaintiff impossible or unreasonable, or that Plaintiff's
position was for a brie[f], nonrecurrent period and there was
not reasonable expectation that such employment would continue
indefinitely or for a significant period."). The same is true
for Mr. Richardson's argument regarding agency officials' "lack
of knowledge relating to USERRA" that he claims amounted to
"reckless disregard" and "incompetence in USERRA matters."
*Compare* Pl.'s Opp'n, ECF No. 47 at 34, *with* Pl.'s Objs., ECF No.
53 at 21 (moving material from page 34, footnote 16 of his
opposition brief into the body of his seventh objection).

Because Magistrate Judge Faruqui's conclusions are
"entitled to great deference" on clear error review, and because
Mr. Richardson's final objection is a mere reiteration of
arguments already presented, the Court concludes that there is
no evidence that Magistrate Judge Faruqui made a definite
mistake. *See Buie*, 2019 WL 4345712, at *3. Instead, the Court
agrees that the statutory provisions of USERRA make "the
employer's duty to search for [escalator] positions [ ]
conditional on Plaintiff remaining unqualified for his current
position even after reasonable accommodations are made." R. &
R., ECF No. 52 at 32 (citing 20 C.F.R. § 1002.225). Because DHS
provided six accommodations tailored to Mr. Richardson's needs

so as to reemploy him in the very position he held prior to deployment, *see supra* section IV.B.1.; and engaged in reconsideration of his request that resulted in two searches for vacancies, it "acted consistently with its USERRA obligations[,]" R. & R., ECF No. 52 at 32; *see also* Def.'s Ex. Q, ECF No. 41-43 at 50 (indicating that the MSPB AJ also found that "the agency complied with USERRA . . . by returning [Mr. Richardson] to the position he held prior to his deployment" and attempted to "accommodate his limitations in his position"). Because Plaintiff refused to attempt DHS's proffered accommodations apart from stretch breaks during the workday, *see* Def.'s Ex. A, ECF No. 41-6 at 43:8-44:19; SOMF, ECF No. 47-4 at 12 ¶ 29; he is not entitled to claim that he remained "not qualified for reemployment in the escalator position" following DHS's reasonable efforts to accommodate him, *see* 20 C.F.R. § 1002.225; R. & R., ECF No. 52 at 32; *see also* Def.'s Ex. Q, ECF No. 41-43 at 50-51 (concluding that Mr. Richardson "failed to prove any violation of his rights under USERRA" when he "refused to try any of the suggested accommodations" and thus "failed to engage in the interactive process" after DHS "agree[d] to explore positions to reassign [him] to").[11]

---

[11] The Court also adopts Magistrate Judge Faruqui's conclusion that "[b]ecause Defendant satisfied its [USERRA] duty, Defendant's lack of knowledge regarding the different

Accordingly, the Court **ADOPTS** this portion of the R. & R., *see* ECF No. 52 at 29-33; and **GRANTS** Defendant's Motion for Summary Judgment as to Mr. Richardson's USERRA claims, *see* ECF No. 41.

### V.   Conclusion

For the foregoing reasons, the Court **ADOPTS** Magistrate Judge Faruqui's R. & R., *see* ECF No. 52; and **GRANTS** Defendant's Motion for Summary Judgment, *see* ECF No. 41. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

> **Signed:**   **Emmet G. Sullivan**
> **United States District Judge**
> **March 17, 2023**

---

obligations between USERRA and the [Americans with Disabilities Act] is immaterial." *See* R. & R., ECF No. 52 at 32-33.